UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JATH T. BROWN,                    )
                                 )   No. CV-08-247-CI
          Plaintiff,             )
                                 )
v.                               )   ORDER GRANTING DEFENDANT'S
                                 )   MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,               )   AND DENYING PLAINTIFF'S
Commissioner of Social           )   MOTION FOR SUMMARY JUDGMENT
Security,                        )
                                 )
          Defendant.             )
                                 )

     BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 18, 21.)  Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 8.)  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

                          **JURISDICTION**

     Plaintiff Jath T. Brown (Plaintiff) protectively filed for social disability income benefits (DIB) and social security income (SSI) on July 28, 2004. (Tr. 75, 705, 710.)  Plaintiff alleged an onset date of April 30, 2003.[1]  (Tr. 75, 705.)  Benefits were denied initially and

---

     [1] The ALJ concluded Plaintiff was not disabled during the period from 4/30/03 to 3/29/07.  A later favorable decision found Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

on reconsideration. (Tr. 57, 61.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Mary Bennett Reed on March 30, 2007. (Tr. 15-28.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 752-92.) Medical expert R. Thomas McKnight and vocational expert Debra LaPoint also testified. (Tr. 729-751, 792-95.) The ALJ denied benefits (Tr. 15-28) and the Appeals Council denied review. (Tr. 7.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts and will therefore only be summarized here.

At the time of the hearing, Plaintiff was 48 years old. (Tr. 75.) At the age of 10 or 11, Plaintiff sustained a traumatic head injury while waterskiing. (Tr. 250, 293, 413.) He suffered a skull fracture and was in a coma for ten days. (Tr. 413.) Plaintiff graduated from high school and earned an associate of arts degree. (Tr. 787.) He obtained a real estate license and last worked in 2003 as a real estate agent. (Tr. 767.) He stopped working as a real estate agent because he was not making money and he was let go. (Tr. 767-68.) Plaintiff also previously worked as an iron worker, laborer, furniture delivery person, apartment manager, door-to-door salesperson, and car salesperson. (769-71, 778, 780-85, 789-92.) His longest job was working for Rent-A-Center for two and a half years. (Tr. 770, 786.) Plaintiff testified he has petit seizures once or twice a week and tonic-clonic seizures every night. (Tr. 759, 761.)

disabled since March 30, 2007. Accordingly, this appeal addresses only the period of 4/30/03 to 3/29/07.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1    He also has had grand mal seizures.  (Tr. 759-63.)  Plaintiff alleges

2    he stays in bed because of confusion, pain and frustration and that

3    all of his abilities are affected.  (Tr. 125.)

4                           **STANDARD OF REVIEW**

5        Congress has provided a limited scope of judicial review of a

6    Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the

7    Commissioner's decision, made through an ALJ, when the determination

8    is not based on legal error and is supported by substantial evidence.

9    *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v.*

10   *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's]

11   determination that a plaintiff is not disabled will be upheld if the

12   findings of fact are supported by substantial evidence." *Delgado v.*

13   *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).

14   Substantial evidence is more than a mere scintilla, *Sorenson v.*

15   *Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a

16   preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir.

17   1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d

18   573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence

19   as a reasonable mind might accept as adequate to support a

20   conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971)

21   (citations omitted).  "[S]uch inferences and conclusions as the

22   [Commissioner] may reasonably draw from the evidence" will also be

23   upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On

24   review, the Court considers the record as a whole, not just the

25   evidence supporting the decision of the Commissioner.  *Weetman v.*

26   *Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*,

27   648 F.2d 525, 526 (9th Cir. 1980)).

28       It is the role of the trier of fact, not this Court, to resolve

conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1    The Commissioner has established a five-step sequential

2   evaluation process for determining whether a claimant is disabled.  20

3   C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is

4   engaged in substantial gainful activities.  If the claimant is engaged

5   in substantial gainful activities, benefits are denied.  20 C.F.R. §§

6   404.1520(a)(4)(I), 416.920(a)(4)(I).

7    If the claimant is not engaged in substantial gainful activities,

8   the decision-maker proceeds to step two and determines whether the

9   claimant has a medically severe impairment or combination of

10  impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If

11  the claimant does not have a severe impairment or combination of

12  impairments, the disability claim is denied.

13    If the impairment is severe, the evaluation proceeds to the third

14  step, which compares the claimant's impairment with a number of listed

15  impairments acknowledged by the Commissioner to be so severe as to

16  preclude substantial gainful activity.  20 C.F.R. §§

17  404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.

18  1.  If the impairment meets or equals one of the listed impairments,

19  the claimant is conclusively presumed to be disabled.

20    If the impairment is not one conclusively presumed to be

21  disabling, the evaluation proceeds to the fourth step, which

22  determines whether the impairment prevents the claimant from

23  performing work he or she has performed in the past.  If plaintiff is

24  able to perform his or her previous work, the claimant is not

25  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At

26  this step, the claimant's residual functional capacity ("RFC")

27  assessment is considered.

28    If the claimant cannot perform this work, the fifth and final

step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 30, 2003, the alleged onset date. (Tr. 17.) At step two, he found Plaintiff has the severe impairment of a seizure disorder. (Tr. 17.) The ALJ found Plaintiff's other alleged impairments are not severe: obstructive sleep apnea, cognitive deficits, and attention deficit disorder secondary to head injury. (Tr. 17-18.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 21.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform
> the demands of work at any level of exertion but that he
> does have certain nonexertional limitations secondary to his
> seizure disorder.  The undersigned is persuaded that the
> claimant would be able to perform work that would not
> involve even moderate exposure to workplace hazards,
> including machinery, heights, etc.

(Tr. 21.)  At step four, the ALJ found Plaintiff is able to perform past relevant work as a real estate sales agent, rental clerk and door to door salesperson.  (Tr. 27.)  Thus, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act from April 30, 2003, through the date of the decision.  (Tr. 27.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, Plaintiff asserts the ALJ erred by: (1) failing to find that Plaintiff has the severe impairment of cognitive disorder; (2) improperly weighing medical evidence; and (3) failing to properly consider lay witness reports.  (Ct. Rec. 19 at 16-13.)  Defendant argues the ALJ: (1) properly found seizure disorder to be Plaintiff's only severe impairment; (2) reasonably considered the medical evidence; and (3) gave legally sufficient reasons for rejecting lay witness reports.  (Ct. Rec. 22 at 6-15.)

## DISCUSSION

**1.  Step Two**

Plaintiff argues the ALJ made an error of law in failing to find his cognitive impairment is a severe mental impairment.  (Ct. Rec. 19 at 6.)  He argues the ALJ erroneously rejected the opinions of Dr. Domitor and Drs. Horn and Brown in favor of the opinions of the medical expert, Dr. McKnight, and Dr. Bailey.  (Ct. Rec. 19 at 8-12.)

At step two of the sequential process, the ALJ must conclude

whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.   20 C.F.R. § 416.920(c).   To satisfy the step two requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.   20 C.F.R. § 416.908.   The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Eglund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.   20 C.F.R. § 404.1520(c), 404.1521, 416.920(c), 416.921.   An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.   20 C.F.R. §§ 404.1521, 416.921. An impairment is not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."   S.S.R. 85-28 at 3.[2]   "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." *Id.*

---

[2]The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.*

Even when a non-severe impairment exists, it must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. § 416.923. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.*

As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence submitted and explain the weight given to the opinions of accepted medical sources in the record. Agency regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. § 416.927.

A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician. *Benecke v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1  *Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d
2  821, 830 (9th Cir. 1995).  If the treating or examining physician's
3  opinions are not contradicted, they can be rejected only with clear
4  and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the
5  opinion can only be rejected for "specific" and "legitimate" reasons
6  that are supported by substantial evidence in the record.  *Andrews v.*
7  *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts
8  have recognized conflicting medical evidence, the absence of regular
9  medical treatment during the alleged period of disability, and the
10 lack of medical support for doctors' reports based substantially on a
11 claimant's subjective complaints of pain as specific, legitimate
12 reasons for disregarding a treating or examining physician's opinion.
13 *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64
14 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

15     The opinion of a non-examining physician cannot by itself
16 constitute substantial evidence that justifies the rejection of the
17 opinion of either an examining physician or a treating physician.
18 *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506
19 n.4 (9th Cir. 1990).  However, the opinion of a non-examining physician
20 may be accepted as substantial evidence if it is supported by other
21 evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at
22 1043; *Lester*, 81 F.3d at 830-31.  Cases have upheld the rejection of
23 an examining or treating physician based on part on the testimony of
24 a non-examining medical advisor; but those opinions have also included
25 reasons to reject the opinions of examining and treating physicians
26 that were independent of the non-examining doctor's opinion.  *Lester*,
27 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th
28 Cir. 1989) (reliance on laboratory test results, contrary reports from

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).    Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.    *Andrews*, 53 F.3d at 1039.

At step two, the ALJ acknowledged Plaintiff's various diagnoses of cognitive communication deficits, cognitive deficits, attention deficit disorder secondary to head injury, cognitive disorder not otherwise specified and post-traumatic attention deficit disorder secondary to head injury.[3]    (Tr. 18.)    However, the ALJ concluded Plaintiff does not have a mental impairment or combination of impairments which posed more than minimal limitations on his ability to perform basic work-related activities.    (Tr. 18.)    A mental impairment generally is considered not severe if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of

---

[3]Plaintiff's Memorandum in Support of Motion for Summary Judgment incorporates by reference his letter brief requesting review of hearing decision.    (Ct. Rec. 19 at 4, Tr. 720-23.)    In that letter, Plaintiff argues, "The ALJ's finding that Mr. Brown's traumatic brain injury resulting from frontal lobe damage is not a severe impairment is in error."    (Tr. 22.)    The ALJ made no such finding.

decompensation.    20 C.F.R. § 416.920a(d)(1).    The ALJ found Plaintiff's cognitive disorder causes only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation of extended duration.    (Tr. 21.)    Thus, the ALJ concluded that Plaintiff's cognitive disorder does not cause a severe impairment.    (Tr. 21.)

In support of her conclusion, the ALJ cited evidence from a number of doctors and psychologists.    First, the ALJ mentioned cognitive therapy records from St. Luke's Rehabilitation.    (Tr. 18, 350-59, 411-12.)   The ALJ pointed out that although the therapist observed Plaintiff to present with cognitive and communication deficits, St. Luke's did limited testing.    (Tr. 18, 351-52.)    The ALJ also noted that more thorough testing by psychologists do not support the impairments found by the therapist.    (Tr. 18.)    Plaintiff was seen for a limited number of visits and did not consistently comply with treatment recommendations.    (Tr. 350-59, 411-12.)    Furthermore, the ALJ observed the record reflects Plaintiff presents himself in an unfavorable light for secondary gain.[4]    As a result, the ALJ gave no weight to the assessment of the St. Luke's therapy reports.    (Tr. 18.)

Next, the ALJ noted Plaintiff's brain injury had not changed between a CT scan in March 2004 (Tr. 270-72) and September 2006 (Tr. 433-34, 437), despite Plaintiff's complaints of confusion.    (Tr. 433.) Plaintiff's symptoms were attributed to noncompliance with seizure medication.    (Tr. 433-34.)

---

[4]The ALJ's negative credibility finding is discussed in detail, below.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

The ALJ noted that in March 2003, Plaintiff's treating neurologist, Dr. Carlson, described Plaintiff's post-traumatic attention deficit disorder as "mild." (Tr. 18, 305.) Plaintiff was working at the time and Dr. Carlson reported Ritalin "really helps him concentrate" and "really helps him focus in the workplace." (Tr. 305.) In April and May 2003, Dr. Carlson indicated Ritalin continued to work well. (Tr. 306, 309.)

The ALJ also highlighted findings in Dr. Horn's November 2004 report[5] suggesting Plaintiff's cognitive difficulties pose no more than minimal limitations. (Tr. 18-19, 293-302.) Among other details, the ALJ noted that Plaintiff was observed as rarely distracted and able to maintain attention to all tasks. (Tr. 18, 294.) The ALJ also pointed out that while scores on two tests suggested that claimant functions in the borderline level of intelligence and has borderline to low average memory functioning, other testing revealed that Plaintiff endorsed items that presented an unfavorable impression, raising the possibility of a mild exaggeration of complaints and problems.[6] (Tr.

---

[5]Shawn C. Horn, Psy.D., LMHC, signed the report as "Psychology Resident"; the report was co-signed by Debra Brown, Ph.D., as "Clinical Supervisor." Both parties cited the report as "Dr. Horn's report," although the ALJ and Plaintiff also referenced it as "Dr. Brown's report." (Ct. Rec. 19 at 10; Ct. Rec. 22 at 9; Tr. 26; Tr. 721.) For clarity, the court references the report as "Dr. Horn's report."

[6]Plaintiff asserts the ALJ "failed to mention Dr. Brown's finding of a valid PAI . . . and the very marked limitations found by Brown and Assoc." The ALJ need not discuss all evidence presented, but must

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1  19, 296.)

2      Additional evidence cited by the ALJ includes the April 2005

3  report of Dr. Bailey, an examining psychologist. (Tr. 19, 315-23.)

4  The ALJ summarized Dr. Bailey's report, including discussion of

5  psychological testing conducted by Dr. Bailey. (Tr. 19.)  Dr. Bailey

6  diagnosed malingering and did not make a Global Assessment of

7  Functioning finding because, "He is not a reliable enough person to

8  get a real assessment of his actual function."[7]  (Tr. 319.)

9

10  explain why significant probative evidence has been rejected. *Vincent*

11  *v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ is not

12  required to comment on every detail in every report.  Furthermore, the

13  ALJ did address the moderate and marked limitations assessed by Dr.

14  Horn and Dr. Brown in assigning no weight to the opinion.  (Tr. 26.)

15  The ALJ provided several reasons supported by the record for rejecting

16  the report.  Plaintiff does not explain why the reasons were legally

17  insufficient.  The ALJ's reasoning is supported by the record and is

18  a reasonable interpretation of the evidence.

19      [7]Plaintiff's argument that the results of Dr. Bailey's report were

20  "a cry for help" due to Plaintiff's depression is speculative and

21  without foundation in the record.  (Tr. 722.)  Plaintiff's assertion

22  that the "tone" of Dr. Bailey's report indicates disbelief throughout

23  supports the ALJ's interpretation of the report.  (Tr. 722.)  Any

24  implication that Dr. Bailey was biased against Plaintiff is also

25  without foundation.  Additionally, Plaintiff asserts that Dr. Bailey

26  did not consider the possibility of brain injury.  (Tr. 722.)

27  However, Dr. Bailey notes reminding Plaintiff of an accident when he

28  was 10 and reviewing Dr. Horn's report, which included a description

The ALJ commented on notes by Dr. Stein, a physiatrist. (Tr. 19.) At Plaintiff's first visit in August 2005, Dr. Stein noted Plaintiff's head injury had resulted in "what appears to be generalized frontal lobe capabilities of executive decision-making, poor anger management, as well as some further problems with memory and depression." (Tr. 18, 413.) In April 2006, Dr. Stein indicated it was possible that lack of restorative sleep caused mood swings, periods of inattention and fatigue and prescribed a sleep aid. (Tr. 19, 425.) In May, July and August 2006, Dr. Stein reported mental status examinations revealed appropriate attention and concentration and normal orientation and affect. (Tr. 19, 426, 428, 430.) The ALJ noted Dr. Stein's mental status exam results do not reflect mental deficits. (Tr. 19.)

The ALJ also referenced findings by Dr. Domitor, an examining psychologist who conducted neuropsychological assessments in 1999 and 2001.[8] (Tr. 20, 250-62.) In March 1999, test results indicated

---

of the accident and injury. (Tr. 315.) It is reasonable to assume Dr. Bailey was aware of Plaintiff's accident and brain injury.

[8]Plaintiff states Dr. Domitor is "definitely a consulting psychologist and arguably a treating psychologist as he tested Brown on more than I [sic] occasion." (Ct. Rec. 19 at 10.) Although the ALJ did not make a specific finding regarding Dr. Domitor's status as an examining or treating psychologist, the ALJ referred to Dr. Domitor as an examining psychologist. (Tr. 20.) The court need not determine whether Dr. Domitor is a treating or examining psychologist because his opinion is contradicted by Dr. McKnight and the ALJ rejected Dr. Domitor's opinion with "specific, legitimate reasons" supported by the

Plaintiff was in the average range of intellectual functioning. (Tr. 20, 256.) Testing revealed deficits consistent with Plaintiff's brain injury, but also intact constructional abilities, reasonably good visual memory, intact basic language skills and reasonably good attention to the auditory environment. (Tr. 20, 256.) In July 2001, repeat testing showed Plaintiff had improved neurocognitive function, increased motor speed and improved emotional functioning. (Tr. 20, 261.) Dr. Domitor opined that the improvements were due to treatment with medication and resolution of Plaintiff's stressful marital situation. (Tr. 20, 261.)

The opinion of Dr. McKnight, a consulting psychologist, was also summarized by the ALJ. (Tr. 20.) Dr. McKnight testified as a medical expert at the hearing and provided written responses to interrogatories after the hearing. (Tr. 677-94, 729-51.) Dr. McKnight diagnosed a cognitive disorder, not otherwise specified, secondary to a reported head injury. (Tr. 677.) After reviewing all the evidence, including the raw data which was the basis for Dr. Domitor's opinions, Dr. McKnight wrote, "Evaluations have never found

---

substantial evidence in the record. (Tr. 26.) *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). It is noted, however, that a treating relationship is probably not established simply on the basis of two examinations which were conducted at the request of another treating provider. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) (treating relationship established after two visits when claimant saw no other physicians during the period, requested treatment, received prescriptions, and described doctor as his treating physician).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

consistent impairment that reflects moderate or marked deficit and his level of credibility and effort, given results of [Exhibit] 8F is a serious concern." (Tr. 678.) Dr. McKnight opined Plaintiff's cognitive disorder was not severe and resulted in only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. (Tr. 679-91.) Dr. McKnight assessed only slight limitations in Plaintiff's ability to perform work-related mental activities. (Tr. 693-94.)

After reviewing the evidence in detail, the ALJ stated, "Based on all the foregoing, the undersigned has determined that the claimant has not had a severe mental impairment or combination of impairments at any time pertinent to this decision." (Tr. 20.) Although the ALJ commented that she was persuaded by Dr. McKnight, the ALJ's discussion of the evidence reflects she considered the evidence as a whole and did not solely rely on the opinion of the nonexamining consulting psychologist. Plaintiff asserts the "only evidence of record supporting the MEs opinion that Brown's documented cognitive impairment is not severe is Dr. Bailey who saw Brown on one occasion and who did not have access to Dr. Domitor's extensive testing." (Ct. Rec. 19 at 10-11.) However, the ALJ cited evidence from Plaintiff's treating and examining physicians and psychologists, including Dr. Stein, Dr. Carlson, Dr. Horn, Dr. Bailey and Dr. Domitor in addition to Dr. McKnight's testimony. Thus, the ALJ cited substantial evidence independent of Dr. McKnight's opinion and did not improperly rely on the medical expert's testimony alone in making the step two finding.

It is the ALJ's duty to resolve conflicts and ambiguity in the

evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).   It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).   The court must affirm the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   The court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).   Although another ALJ may have interpreted the evidence differently, this ALJ properly weighed the medical and psychological opinions and cited substantial evidence supporting her finding that Plaintiff's cognitive impairment is not severe.

Attached to Plaintiff's Memorandum of Authorities in Support of Motion for Summary Judgment is a December 16, 2008, favorable decision by another ALJ.  (Ct. Rec. 19 Exhibit 1.)  In that matter, Plaintiff's alleged onset date was March 30, 2007, the day after the March 29, 2007, ruling which is the subject of this proceeding.   Although Plaintiff cites no authority, he suggests that the December 16, 2008, ALJ opinion should be considered as evidence that his cognitive impairment "more than meets" the test for a severe impairment.  (Ct. Rec. 19 at 8.)  However, remand on the basis of a subsequent favorable determination is appropriate only if the Plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding, and good cause for failing to bring this evidence in the original proceeding.   42 U.S.C. § 405(g); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (9th Cir. 2009); *see also Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001).  The mere existence of the later decision in a claimant's favor, standing alone, cannot be evidence

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

1  that can change the outcome of a prior proceeding.  *Allen*, 561 F.3d at
2  653.  In this case, Plaintiff presents no new evidence other than the
3  later favorable decision; therefore, the later decision has no impact
4  on the outcome of this proceeding.

5       Plaintiff also argues that Dr. McKnight's opinion is
6  "questionable" and based on incomplete evidence because he did not
7  have the opportunity to review Sacred Heart Medical Center Epilepsy
8  Monitoring Unit records covering January to March 2007.  (Ct. Rec. 19
9  at 3, Tr. 695-704.)  Plaintiff notes the medical expert at the hearing
10 in the later matter used the epilepsy clinic reports as part of the
11 basis of his opinion that Mr. Brown equaled a listing.  (Ct. Rec. 19
12 at 3-4.)  Plaintiff's argument is unclear and he cites no authority,
13 but he seems to suggest that Dr. McKnight's opinion should have been
14 supplemented by a medical expert review of the epilepsy clinic
15 records.  ALJs are advised to consult a medical expert to gain more
16 insight into the significance of clinical signs and laboratory
17 findings.  S.S.R. 96-2p.  An ALJ is required to obtain an updated
18 medical opinion from a medical expert after receiving additional
19 medical evidence when, in the ALJ's opinion, such evidence "may change
20 the State agency medical or psychological consultant's finding that
21 the impairment(s) is not equivalent in severity to any impairment in
22 the Listing of Impairments."  S.S.R. 96-6p.  The ALJ in this matter
23 discussed the epilepsy clinic records in detail.  The ALJ pointed out
24 that one week of monitoring in the epilepsy clinic did not confirm
25 Plaintiff's purported seizures, as well as other factors supporting
26 the ALJ's conclusions.  (Tr. 26, 701.)  It is reasonable to infer from
27 the ALJ's discussion of the evidence that she did not believe the
28 medical findings regarding equivalence would change upon further

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

1  medical expert review.[9]

2       Even if the ALJ erred by failing to seek medical expert review of
3  the epilepsy clinic records, the error is harmless.  Errors that do
4  not affect the ultimate result are harmless.  *See Parra v. Astrue*, 481
5  F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131
6  (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378,
7  1380 (9th Cir. 1984).  The epilepsy clinic records discuss findings
8  related to Plaintiff's seizures.  The ALJ concluded Plaintiff's
9  seizure disorder is a severe impairment and assessed limitations
10 supported by the evidence resulting from that disorder.  The epilepsy
11 clinic report provides little information about Plaintiff's cognitive
12 impairment and sheds no light on any work-related limitations arising
13 from a cognitive disorder.  Thus, the epilepsy clinic evidence is not
14 particularly relevant to the step two determination regarding
15 Plaintiff's cognitive disorder.  It was therefore reasonable for the
16 ALJ to make findings about Plaintiff's cognitive disorder without an
17 updated opinion from a medical expert specifically discussing the
18 Sacred Heart Medical Center Epilepsy Monitoring Unit records.  The
19 outcome of the step two finding would not change and the error, if
20 any, is harmless.

21 **2.   Lay Witness Evidence**

22      Plaintiff argues the ALJ did not properly consider lay witness
23 evidence.  (Ct. Rec. 19 at 12-13.)  In the record are affidavits of
24 relatives and friends of Plaintiff's ex-spouse, all filed in

25

26      [9]The court may draw reasonable inferences from the ALJ's
27 discussion of the evidence.  *See Magallenes v. Bowen*, 881 F.2d 747,
28 755 (9th Cir. 1989).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20

Plaintiff's dissolution proceeding in 2001.  (Tr. 183-218.)  The ALJ
rejected the third-party statements.  (Tr. 24.)

In a disability proceeding, the ALJ may use evidence from non-
medical sources.   20 C.F.R. §§ 404.1513(d), 416.913(d).   Evidence
from non-medical sources can be used to determine the severity of an
impairment and how it affects the ability to work.  S.S.R. 06-3p; 20
C.F.R. §§ 404.1513(d), 416.913(d).  "Information from other sources
cannot establish the existence of a medically determinable impairment.
. . . However, information from 'other sources' may be based on
special knowledge of the individual and may provide insight into the
severity of the impairment(s) and how it affects the individual's
ability to function."  S.S.R. 06-3p.   Lay testimony can never
establish disability absent corroborating competent medical evidence.
*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, the
ALJ is required to "consider observations by non-medical sources as to
how an impairment affects a claimant's ability to work."  *Sprague v.*
*Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

An ALJ must give reasons "germane" to lay testimony before
discounting it.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  It
is appropriate to discount lay testimony if it conflicts with medical
evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).
The reasons "germane" to each witness must be specific.  *Bruce v.*
*Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Comm'r*, 454 F.3d
1050, 1054 (9th Cir. 2006).

The ALJ gave two reasons for rejecting the lay witness statements
by friends and relatives of Plaintiff's ex-spouse.  The first reason
is that they "do not appear to be reliable or impartial for purposes
of establishing the claimant's disability" because they were prepared

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

to assist Plaintiff's former spouse in establishing custody and visitation rights as well as child support. (Tr. 24.) The ALJ also noted that there were allegations that Plaintiff engaged in an extra-marital affair, which could have influenced the contents of the statements. (Tr. 24.) The second reason is that the statements are inconsistent with the objective evidence. (Tr. 24.) The ALJ discussed the contents of each affidavit, pointed out inconsistencies in the evidence, and noted that they are not supportive of disability. (Tr. 24.) These reasons are germane to the witnesses and are supported by the record.

The ALJ also rejected the statements of Janna Rohrer, variously noted in the record as Plaintiff's significant other, fiancé and wife. (Tr. 24, 310, 432, 434, 671.) The ALJ discussed the contents of her statements in detail and pointed out several inconsistencies and a lack of objective evidence to support her observations of mental difficulties. (Tr. 24, 111, 180.) The ALJ concluded her statements and reports to doctors were not credible and explained that determination in detail. (Tr. 25.) The ALJ provided germane and legally sufficient reasons justifying the rejection of Ms. Rohrer's statements.

**3. Credibility**

Plaintiff does not directly challenge the credibility determination, but does take issue with elements of the ALJ's credibility finding. (Tr. 723.) The ALJ found the Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by Plaintiff, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not found to be entirely credible. (Tr. 23.)

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02

1   (9th Cir. 1999).    In the absence of affirmative evidence of

2   malingering, the ALJ's reasons must be "clear and convincing."

3   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007);

4   *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169

5   F.3d at 599.  The ALJ "must specifically identify the testimony she or

6   he finds not to be credible and must explain what evidence undermines

7   the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

8   2001)(citation omitted).

9       Here, the ALJ cited a number of factors supporting the

10  credibility determination.  First, there is evidence of malingering in

11  Dr. Bailey's report which the ALJ gave great weight.  (Tr. 27.) Dr.

12  Bailey diagnosed malingering on the basis of objective test results

13  and detailed personal observations.  (Tr. 315-319.)  Thus, an adverse

14  credibility finding is justified based on the evidence of malingering.

15      Even if Dr. Bailey's malingering diagnosis is not considered, the

16  ALJ pointed to clear and convincing evidence justifying the

17  credibility finding.  The ALJ cited Plaintiff's educational and work

18  history, lack of documentation of frequency of seizures, noncompliance

19  with medication and recommended abstinence from alcohol, and

20  activities of daily living.  (Tr. 27, 223, 226, 229, 232, 244, 297.)

21  The ALJ also considered Dr. McKnight's testimony which pointed out

22  other evidence of malingering throughout the record.  (Tr. 677, 691,

23  733-740.)  These are all permissible considerations in making a

24  credibility determination.  *Thomas*, 278 F.3d at 958 (daily living

25  activities, work history, inconsistencies permissible considerations);

26  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (failure to

27  follow a prescribed course of treatment and daily activities

28  permissible considerations).  The ALJ may also rely on ordinary

techniques of credibility evaluation.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Smolen*, 80 F.3d at 1284.

Plaintiff takes issue only with the ALJ's consideration of Plaintiff's activities of daily living. (Tr. 723.) Even if the ALJ's reasoning regarding activities of daily living were rejected as Plaintiff urges, the ALJ still cited clear and convincing evidence supporting the credibility determination.  Thus, based on evidence of malingering and other evidence identified by the ALJ, the credibility finding is legally sufficient and supported by the record.

### CONCLUSION

A review of the record and the ALJ's findings reflects the ALJ's decision is supported by substantial evidence and is not based on error.  Accordingly,

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED.**

DATED August 25, 2009.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 25